Thank you, Your Honor. May it please the Court. Good morning, Your Honor. My name is Edward McIntyre. I have the pleasure of representing the hearings before the Court. With the Court's permission, I'd like to save about three or four minutes for rebuttal. Thank you. There's only one issue that this Court has to address, and that is to predict how the California Supreme Court would have decided the two questions that have come up. Because this case is in federal court on diversity. California law applies. With that having been said, I'm mindful of what Justice Roberts recently said to a group of law students, which was to the effect that if it were all that clear, we wouldn't be here. We have, however, this Court's decisional standard when interpreting, in this instance, California law and how the California Supreme Court would decide these issues or how to predict how it would decide these issues. The district court, in this case, quoted that standard. Unfortunately, the district court only quoted half of it. In the Bartoni-Corsi case, which the district court cited to the record in Excerpts 386, it said that it must predict how the highest state court would decide this issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, restatements as guidelines, and it stopped its question. It said, quote, what's your best case to show your position that the California courts would adopt? On the first question, well, this Court must, and it goes on to say, that where the California intermediate appellate courts have addressed the issues, this Court, absent convincing evidence the Supreme Court wouldn't do that, is obligated to follow the intermediate appellate courts. On the first issue, the best case is Mirkin. It's a California Supreme Court decision, and in Mirkin, the Supreme Court said it was urged to accept the fraud on the market theory for common law fraud, and it said, no, thank you. Under California, you have to plead five things for common law fraud, and you must plead reliance, and we will not accept for common law fraud in California the federally codgered up, if you will, fraud on the market theory as a substitute for reliance. Two of the causes of action here were for common law fraud, and there is no question in this record that in the complaint, remember, this is a pleading case for the fraud claims, there is no question in this record that the plaintiffs pled direct reliance in face-to-face conversations. That's Mirkin. Mirkin was reiterated again by Small. Let me come next, Your Honor, to the California statutory fraud claims, the California Securities Act, and again, I go to Mirkin. What California Supreme Court said in Mirkin was, but of course, by contrast with the federal 10B section 2012-2 standards, reliance is not an issue under California's securities laws. Ergo, the California Supreme Court were facing this issue of to what extent fraud on the market would even play in this case would say not a win. We said in Mirkin it has no place in common law. We said in Mirkin, quoting Bowdoin, and that's been reiterated by the Diamond Multimedia case, that reliance isn't even an issue when you're pleading statutory fraud under California's securities laws. If, however, the California Supreme Court wanted to look outside its own jurisprudence under its own decisional canons, where does it look? It looks to the Supreme Court of the United States and the Supreme Courts of other states. If it were to look first to federal law, since I think it's a commonplace that a fair amount of California evolution of its securities law jurisprudence has looked to the feds, if it were to look to federal law, it would look to the United States Supreme Court decision in BASIC. And in BASIC, the U.S. Supreme Court made the very distinction that the district court was asked to make here. That is to say, the distinction between face-to-face representations and what happens in the marketplace. And the U.S. Supreme Court said that in face-to-face transactions, the inquiry is into an investor's reliance upon information based on subjective pricing of that information by that investor. And distinguish that from the marketplace, whereas the Supreme Court put it in BASIC, the marketplace acts as the agent for the investor, bringing in all of the relevant information and doing the, quote, price setting there. BASIC, as we all know, was the U.S. Supreme Court decision that adopted that long line of cases out of this circuit starting 32 years ago with Blackie, Blackie v. Barrack, the fraud on the market theory. And in BASIC, the U.S. Supreme Court said, we will accept fraud on the market when someone is relying on the marketplace as a rebuttable presumption, as a substitute for reliance. Finally, again, if the California Supreme Court were to look beyond its own jurisprudence, it would look to this circuit. Why? Because it sits in this circuit and because this circuit developed. Maybe it doesn't like this circuit. I beg your pardon? Maybe the Supreme Court of California doesn't like the Ninth Circuit. If you look at its decisions, it looks, to the extent it looks to federal law at all, it does look to this circuit. And I respectfully submit on this question, if you wanted to look, as a Supreme Court would, to the most developed body of law on fraud on the market and whether three paid subscription reports have any impact on the market, again, I respectfully submit, you would look to the Ninth Circuit. And in the Ninth Circuit, we have the Hambrick and Quist decision, which again does, makes exactly the same distinction that the United States Supreme Court made in BASIC. In Hambrick and Quist, the Court distinguished, this Court distinguished between an individual who in a face-to-face situation receives only some of the information versus, as this Court said, an individual who relies only, only on the price established by the market. Do you think that's fair if your clients have been dealing with some outfit like Exxon and Exxon's market is pretty obvious all over the world and they can claim that somebody from Exxon said, well, we've got all these different contracts and failed to disclose it. Is that fair to the market itself? Do you see what I'm saying? The market is irrelevant in that circumstance under California law, Your Honor. If an Exxon, take Exxon's, if an Exxon executive wants to buy this little company and is making representations which for purposes of this case, a pleading case, one has to assume were false and misleading in material, Whether there is information out there in the marketplace or not, the California Supreme Court would say it doesn't make any difference in a one-on-one representation. In fact, this circuit has said in Hambrick and Quist, it doesn't make any difference. This Court has said omissions, it's an omission case, by corporate insiders are not rendered immaterial by the fact that the omitted facts are otherwise available to the public. Where a plaintiff alleges actual reliance, as we have here, on a particular statement, it does not matter that the market, and this Court actually italicized market in its opinion, is aware of the facts necessary to make the statement not misleading. So under California law, the only relevance of information in the market would be to test the reasonableness of the reliance, because it has to be reasonable reliance under California law, at least California common law. And reasonableness, as we all know, is the quintessential jury question. To come to Your Honor's fairness argument, the issue gets addressed. It simply just doesn't get addressed at the pleading stage, which, as we know, the whole fraud case comes here on a 12b6 motion where leave to amend wasn't even granted. If I've addressed Your Honor's question, I would like to turn, if I may, to the contract questions, and I would like, again, to answer that question, what are the best cases to look at? Again, mindful of the decisional mandate of this Court, that it must look, where the California Supreme Court has been silent up until now, it must look to California's intermediate appellate decisions unless it has convincing evidence that the California Supreme Court would reject those decisions. Okay? I will come, there are, in fact, California decisions that address whether a survival, I'm sorry, that address the issue of whether survival, absent any other words, is a contract statute of limitations. Hambrick and Quist, California appellate decision, teaches us three things. If you incorporate the laws of a state in a contract, you necessarily incorporate its statutes of limitations. There's no way to contract that out. Hambrick and Quist is silent on the issue. I suspect, however, Your Honor, intent of the parties being what it is, if the parties expressly say, in this contract, although it will be governed by the law of Delaware, we reject the statutes of limitations of the law of Delaware, I can't imagine a court not honoring that. That isn't this case here. Here what we have is the law of California applies, and if you look at California law, it says, among other things, Hambrick and Quist decision, when you say California law applies, you also apply its statutes of limitations. Can I ask a real quick clarification question? Certainly, Your Honor. You've mentioned the Hambrick and Quist, I take it it's Hambrick and Quist Venture Partners case? Yes. That's Cal App? I beg your pardon. You're right, Your Honor, and I now hear myself misspeaking. What's the? My earlier, the site to this Court's decision, of course, is Apple, In re, Apple Securities. I beg your pardon. Thank you for catching that, because I'm racing against my own clock. It's okay. Hambrick and Quist, you're quite right. It's a 38 Cal App, the fourth decision. Okay. One, you incorporate California statutes of limitations. Two, Hambrick stands for the proposition that parties can contract around and shorten, statutes of limitations, and shorten them if they do so. That's Hambrick. Three, Hambrick says in a footnote at page 1544, further, a provision specifying, in this instance, the life of a warranty has no bearing on the time period for filing suit after the warranty has been breached. I respectfully submit that if this issue were before the California Supreme Court, absent convincing evidence, it would ignore that. It would take that into account in addressing the survival clause question. Okay. Next longstanding California appellate decision is Lewis v. Hopper. Lewis v. Hopper again addressed the question Your Honor put. Can you shorten a statute of limitations? Lewis v. Hopper says, yes, you can, but because we don't like it, disfavor of the word was used, you must be clear, and if you're not, it will be decided against you because the default is what the legislature enacted. Statute of limitations. Is the language here clear? So clear that as a matter of law, a court can only go one way, and as we all know, all it says is survival. I respectfully submit it's not. Under California appellate, intermediate appellate decisions, the default is the statute of limitations. Finally, the last of the appellate decisions that bear on the issue, of course, is Moreno. Moreno, it could not have been clearer that the parties deliberately had or had a contract that expressly shortened the statute of limitations. And what the court said was, that's fine, but you have failed to take into account California's discovery rule, and if you shorten a statute of limitations to a point where it makes it extremely difficult or impossible to discover the event, i.e., the accrual of the cause of action, then we're not going to allow that. Why? Because it is against California public policy. Now, in this case, the district court actually wrestled with that issue the first time around. As the court may remember, this came up on the 12B motion, and the district court said, no, no, no, no. I cannot read survival as a contract statute of limitations. It came back on a summary judgment motion, although the court acknowledged that it was still deciding this issue as a matter of law and basically flipped around and said, no, I will read it that way. But the court acknowledged in the record, it's excerpts of the record 230, that under this provision, the Herrings could have discovered on day 364 that they had a cause of action, and they would have had only one day to get to a lawyer, have him do the investigation and file the lawsuit, if you say that a one-year survival clause is also a statute of limitations. If you will, it is a conflating of the accrual period and the statute itself. Absent convincing evidence that the California Supreme Court would reject Hambrick and Quist, Moreno and Lewis. And if you went on the statute of limitations issue but lose on the securities issue, what do you have left in the case? Two breach of contracts, which are the no material adverse change clause in the contract. Factually, it is the same thing as the securities clause. It would come out factually, I suspect the evidence would be markedly the same, if not exactly the same. But I'm not willing to concede the court's premise. I just was wondering what's still left there. Okay. Again, what would Teradyne have the California Supreme Court look at? Pacheco seems to have been thrown under the bus at this point. It would have the California Supreme Court look at two unreported district court decisions from two district courts here. I have searched and have not found in any instance where it's an issue of first impression in California that the California Supreme Court has looked to district court decisions. It has looked to circuit court decisions, either to reinforce its own thinking or to expand its thinking.  It is contrary to the canons that the California Supreme Court itself says it is imposing when it looks outside its own jurisprudence. In fact, it's made very clear that it's quite capable of rejecting federal court decisions as it did in Mirkin. We will not adopt the fraud on the market theory for as a substitute for reliance and common law fraud. As it did when it was urged in the Diamond Multimedia case to use a PSLRA standard of pleading, the heightened standard of pleading. And it said, no, we won't. That's not the law of California, which is why it's urged that this court should say that the California Supreme Court would apply Brody. It can't. Brody, as you know, was determined on under the heightened standard of pleading under the PSLRA. And in Diamond Multimedia, the California Supreme Court expressly rejected the PSLRA, acknowledging that since the PSLRA, there are a whole bunch more securities lawsuits being filed in California state courts. That's not for us to decide as a matter of public policy. That's for the legislature. We will apply the law and rejected the heightened pleading standard. You're right at two minutes. I'm right at two. And unless the Court has questions, I will stop here and save my last two. Saved. Thank you. Thank you. Mr. Hirshman? Good morning. May it please the Court? I'm Jordan Hirshman from Bingham & McCushin. I represent the defendants in this case. And I'd like to, by way of an overview, I'm going to describe briefly the fact pattern that gives rise to this case, and then I'll get into the two issues that Judge Lorenz correctly ruled on the motion to dismiss, and he correctly ruled on the motion for summary judgment. The fact pattern is the complaint. Yes. Right? But I think that it's very important to have an understanding of exactly what this context is on these claims. Well, you go right ahead. It's your time. But don't deviate from the complaint. We have to assume, for Rule 12 purposes, that the complaint is accurate. I understand, Your Honor. Go right ahead. Okay. First of all, this case arises out of a stock-for-stock merger that occurred in 2000. The merger agreement was signed on August 1, 2000, and it was closed on August 15, 2000. Now, at that point in time, Teradyne had just completed its first two quarters of the year 2000. In the first quarter of the year 2000, it's worth keeping in mind this was the absolute high point of the high-tech marketplace. March 2000 was the high point of NASDAQ. The first quarter of 2000, Teradyne reported more sales and more orders than in any quarter in its 40-year history. This is not some little Internet company. It's a big, long-standing company. In the second quarter of the year 2000 ---- All of what you just described is in the complaint? Yes. Yes. And it's either in the ---- Where does the complaint talk about the height of the market? It is in the court can take judicial notice of facts respecting market-wide phenomena such as the state of the marketplace, and there are numerous cases that have. I want you to tell us when you're going outside the complaint what you just said, right? It's fine. Judicial notice is fine. But Rule 12 is Rule 12, the facts of the well-pleaded complaint. We have to assume are true. Your Honor, the facts respecting Teradyne's financial results in the first quarter of the year 2000 and the second quarter of the year 2000, many of those facts are in the complaint. They are also in SEC filings of which the court can take judicial notice and regularly does take judicial notice. And the actual historical results themselves are ---- Can you do that for purposes of Rule 12? Yes, you can, Your Honor, and in several cases that's recognized in the circuit. And it is vitally important to understand that the plaintiffs have never challenged the accuracy of any of these reported financial results. Now, in the second quarter of the year 2000, and this is really what the case arises out of, Teradyne put out a press release for its second quarter of the year 2000. And that press release, that's the July 18th press release, and it reported record sales, reported record earnings. And they were 85 percent higher than the year before. Now, it also reported its orders for the second quarter of 2000. And those orders were $826 million in orders. This is all in the complaint and in the press release, which is incorporated by reference in the complaint. Those $826 million in orders were, on the one hand, they were higher by 20 percent than any orders the company had ever reported for any quarter except the first quarter of the year 2000. They were 20 percent below the results that Teradyne reported in orders for the year 2000. And that disclosure triggered a drop in Teradyne's stock price of 11 points in one day. The complaint alleges that Teradyne sent that press release to the plaintiffs on or about July 18, 2000. That's two weeks before the merger agreement was even signed and four weeks before the closing of the merger. They sent a copy of it by mail or fax or something? By email is what the complaint alleges. They admit that it was sent to them. Yes. It's pled in the complaint. Now, the complaint also alleges, and this is really what the guts of their complaint is about. What they're complaining about on this piece of it, they're complaining that although the press release reported total orders, which were 20 percent below the first quarter of the year 2000 and triggered that 11-point stock drop, that it didn't separately report Teradyne's STS orders, a division of Teradyne, which had declined 30 percent in the second quarter as compared to the first quarter. Can we affirm the district court's Rule 12 dismissal without embracing the fraud on the market theory? Yes. The fraud on the market theory that my brother has discussed at length actually has nothing to do really with this case. The Merkin case that he cites, that's a case where plaintiffs in that case sought to be able to use fraud on the market in order to get past the rebuttable, in order to get past their obligation to plead direct reliance. And in that case, Merkin, the court said, no, a plaintiff in a direct fraud case has to prove direct reliance, cannot rely on the rebuttable presumption of reliance that the fraud on the market doctrine creates. But here, there are numerous other grounds. And basically, Your Honor, in a nutshell, even if what actually happened is that Teradyne did broadly disclose its STS orders for the year 2000. There are numerous reasons why the challenged misrepresentations are not actionable as a matter of law. And we briefed all of those reasons below. And I will briefly run through them now. Puffery and that sort of thing? All of that, yes, exactly, Your Honor, and because there's no misleading statement here. Does puffery apply to omissions? Puffery. Can you start with a yes or no? Puffery does not directly apply to an omission, but that is because puffery is a doctrine that applies to an affirmative representation. In order for an omission here to be actionable, it must render a, there must be a duty to disclose the allegedly omitted information. Here, the only way the duty would arise is if Teradyne had made a statement that would be misleadingly incomplete, but for the disclosure of the information. There is no statement of material fact that Teradyne made that would be misleadingly incomplete absent the disclosure of Teradyne's STS orders for the second quarter of 2000. So on the one hand, the complaint flat out states that Teradyne, and I'm quoting the complaint, quote, the defendants failed to disclose the true facts, and this is bracketed concerning its Q2 2000 STS orders, close bracket, to the hearings or the investing public before the closing. That's what they alleged. And Judge Lorenz took them at their word and looked at the fact that Teradyne, in fact, did disclose in an earnings call all of its, the exact amount of its STS orders in the year, in the second quarter of 2000. And that information was contained in analyst reports, which courts regularly judicially notice when looking at a motion to dismiss. And in addition, there was a Wall Street Journal article that came out the very next day on July 19th, two weeks before the closing date, meaning before the date the document was signed, four weeks before the closing date, that said Teradyne's drop in orders in the second quarter was attributable to the decline in STS orders for the second quarter. And frankly, the disclosure to the hearings of the 20% sequential decline in Teradyne's orders in the second quarter of 2000 necessarily disclosed the decline in STS orders. And that is because, as the complaint alleges, at that point in time, Teradyne was deriving 84% of its profit from its STS orders. At that point in time, as the complaint alleges, Teradyne, quote, is STS close, quote. Now, even if Teradyne, and this comes right back to your question, Your Honor. Even if Teradyne had not disclosed, as it did, its STS orders for the second quarter of 2000, the challenge statements would still not be actionable. The challenge statements are the press release. The press release reported accurate historical information. And it's not challenged to be inaccurate. And accurate statements of historical fact aren't actionable. And the press release doesn't disclose anything about STS orders in particular. And the controlling case here on this issue is this Court's decision in Brody, which speaks to the issue of materiality. And I will point the Court to the case under the PSLRA. It is post-PSLRA, Your Honor. But the materiality standard that the Court is addressing is applicable in State court cases. And the PSLRA did not change the materiality standard under Federal securities law. Let's suppose a hypothetical case of the nature of this one, where the sole allegation in the complaint is that some information exchanged during the purchase period omitted material information. And the response to that in the form of a motion to dismiss is that the information that was transmitted necessarily included by implication the full picture. Could a district court grant 12B on that? I'm not saying that's this case. I'm just asking you. The allegation is that a piece of paper omitted material fact. Right. The response in the form of a motion to dismiss is, Your Honor, inferentially this statement contains the very omitted material that plaintiffs are complaining about you should dismiss because this doesn't state a claim. Right. And the answer is, the answer is, depending upon the exact facts, if it's on these facts, the answer is yes. And the controlling law is this Court's decision in Brody, which expressly speaks to this issue and states the following. A statement will not mislead, even if it is incomplete or does not include all relevant facts. To be actionable under the securities laws, an omission must be misleading. In other words, it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists. Now, in the ---- Stop this for a second. This case was originally filed in Superior Court in San Diego? That's correct. And removed to Federal Court? That is correct. Okay. So the securities law we're talking about is what? It is California State securities law. And the securities law being talked about in the passage you just quoted is what? It's Federal securities law, except, Your Honor, and I'm now quoting McCormick v. Fund America Companies, this Court's decision from 1994. Quote, Plaintiff argues that Federal standards of materiality do not apply to his state authorities. The Federal materiality standard is regularly applied to state securities claims. And I would cite to you the following California State court case on that issue, Insurance Underwriters v. Natomas, which is Cal App 1986. We cite it in our briefing. So the materiality standard, and Judge Lorenz looked also at the Pachico case, which likewise did the exact same thing in a very similar fact pattern. The Federal materiality standard is regularly applied in this circuit and in California State courts. Someone files either in California State court or in a removed action in Federal court under California law a complaint that alleges that a representation was false and material. And the response to that from the other side is a Rule 12 motion saying the statement was not material. Here's why. Absent conversion to a motion for summary judgment, could a district court grant that relief? Yes. The district court can. By the mere assertion from the defense that the statement was not material. It's, Your Honor, it isn't not simply on the mere assertion that it's not material, but rather on citation to authorities, as we cite in this case, looking at analogous statements, immaterial as a matter of law for numerous reasons. And that is this case. In fact, another district court, the Massachusetts District Court, in a similar case arising under the same fact pattern, like Judge Lorenz, held the July 18th press release not actionable as a matter of law because it only disclosed accurate historical information. And the information that was omitted from it concerning the STS orders did not render false or contradict in any way the impression created by the press release. It was completely consistent with the impression created by the press release. Let me ask you a hypothetical question. Let's suppose an instance in which accurate information is in the marketplace. It's in the financial media. It's in the Wall Street Journal. It's in subscription services, et cetera. But at the time of closing, the seller says to the buyer, you don't have to look at this financial information that's in the press. What's in this paper right here is entirely accurate. That's what you need to rely upon. Could, if that were the case, I understand it's not this case, but if that were the case, would there be a defense based on truth in the market? Where the maker of the representation is affirmatively telling the recipient to ignore what's in the public, in the media? Well, Your Honor, frankly, I'm not certain of the answer to that question. I think that on that fact that You wouldn't even concede that. Well, I think that an argument could be made on a motion to dismiss that if accurate statements of fact, accurate financial information is provided to the recipient, then I think that there is. Well, my hypothetical is it's in the newspapers, it's in the financial services, it's out there, but the buyer is affirmatively told to ignore it. Would truth in the market be a defense? I'm not sure in that instance that truth in the market would be a defense, Your Honor, but I think an argument would be there for the defendants to make that it's the issue isn't really truth in the market in that case. It's that if the plaintiff was given the accurate financial information and had it, as this plaintiff did, then under those circumstances, the reliance placed upon a subjective statement could be unjustifiable. But I could also see that that is an issue that might be addressed on summary judgment. That isn't the fact pattern here, but I could see that issue arising. These statements aren't actionable. Very briefly on Apple before I address the contract issue, as I do want to address the contract issue. The Apple case that the plaintiffs cite, referred to as Hamburg and Quist, but it was Apple. Apple doesn't change anything here. Brody controls for the reasons that I discussed. And the Apple case presupposes that there is a misleading statement. The language that the plaintiff cites from Apple presupposes that there is a misleading statement here. The Apple case turns on the issue, does the omitted information render non-actionable an otherwise misleading statement? The plaintiff put a hypothetical in his brief about a car dealership, an automaker that might say our cars have a $1,000 profit and it's really $400. And he tells the Wall Street Journal it's $400, but he told the plaintiff it's $1,000. There is no statement like that here. There is no actionable misrepresentation. The press release isn't actionable. None of the statements that they pointed to are actionable under governing law as a matter of law. And the last point I'll make about the fraud claim is it also fails on scientra grounds. And that is why the disclosure to the entire marketplace is dispositive, not just for the 12b6 grounds, but for the 9b ground. And that is because it simply makes no sense to suppose that if the defendants were allegedly trying to conceal from the plaintiffs the amount of their STS orders for the second quarter of 2000, they would have broadly disclosed to the entire marketplace that exact information on July 18 and 19, 2000, and had it thereafter published in places that are regularly considered by the courts to be public disclosure. It's simply, it's asking the court to leave its common sense on the steps of the courthouse, as the court in Thornton v. Micrographics said, as the court in Siena said. It simply can't pass the test of common sense. As a fraud claim, it is inconsistent with an allegation that the defendants were deliberately seeking to conceal information from the plaintiffs. And that's a separate and dispositive reason for why the fraud claim fails. You're down to about a minute and a half. Do you want to talk about survival? Yeah. On the survival clause, Your Honor, I guess I'm going to quickly address the cases that the plaintiffs addressed. First of all, the language of a survival clause is a stock contract provision. We have cited to the court numerous cases from district courts in California and all over the country that have uniformly interpreted it the exact same way and have held it's not susceptible to any other reasonable interpretation. And I simply, the plaintiffs do not cite a single case that stands for their interpretation. The district court had an obligation to find a meaning to the word survive under California law. What does it mean? The plaintiff's proper interpretation is that it extends the period during which those representations can be breached. There is no case that has ever sustained that interpretation. There are numerous cases that we've cited in our briefing that expressly reject that interpretation of a survival clause as extending the period during which a representation can be breached. Plaintiffs' own corporate counsel could not cite one instance where a representation of material fact could be breached on any day following the day it was made. For example, if the warehouse burned down the day after someone says there's been no material adverse change in our business condition, it still doesn't render that representation false because it was true on the day it was made. Now, as far as the Hamburg and Quist case that the plaintiffs cite, that case does not address this issue. And if anything, it supports the defendant's position in this case. We need to wind up. Okay. Under Hamburg and Quist, I asked the Court to look at the entirety of that footnote, because in that case what was actually happening was that the plaintiff there was time barred. The case is about a fight over choice of laws. And the plaintiff sued three-plus years after the date that the breach occurred. And under Delaware statute of limitations, it would be three years and time barred. Under California, four years. In that footnote, the plaintiff there tried to argue that the survival clause extended to five years, because it was a five-year survival clause, the period during which suit could be brought. That is, it extended. That is, it created a breach period. And what happens in that footnote is that the Court rejects that theory, which is the plaintiff's very interpretation of a survival clause in this case. Okay. Thank you. Thank you for your argument. We'll hear rebuttal at this time. Thank you, Your Honor. Judge Hawkins, let me address straight out your issues. I'm glad to hear that Brody controls. And now let me direct the Court to its own decision in Brody. Big headache, misrepresentation. In order to survive a motion to dismiss under the heightened pleading standards of the PSLRA, the plaintiff's complaint must specify. And it goes on. Then we have the passage that we just heard read at the Court. And then this Court went on to say, thus, in order to survive a motion to dismiss under the heightened pleading standards of the PSLRA, and et cetera, et cetera, et cetera. The PSLRA controlled Brody. The California Supreme Court has specifically rejected the PSLRA heightened pleading standard. And we are here trying to divine what the California Supreme Court would have done. Can you decide the securities case without turning to Pacheco? I do not believe so. Because if you look, 12b motion, what the district court did, I'm sorry, fraud on the market theory, excuse me, was your question. And I refer the Court to pages 221, 222 of the record. Judge Lorenz. Now, a district of Massachusetts case cited by Defendant Pacheco supports the view that information disclosed to the market renders immaterial a company's failure to disclose that information to the plaintiffs. That is the fraud on the market theory in reverse. The fraud on the market theory, of course, is that you are entitled to rely on the efficient market. Next page, the Court goes right on and does the same thing, except that it also cites a case from California. California district case, the In Re Cyprus securities litigation. Information credibly entered the market because it was contained in reports by Kidder Peabody and Wortham Schroeder. And, again, if you look at that, that was a fraud on the market case. The rabbit that the district court puts in the hat here is that the information must be credibly in the market. It is fact sensitive. It is inappropriate for a 12b6 motion. If I may, one last point. I would direct the Court to paragraph 22 of the complaint. You gave Mr. Hirschman a hypothetical and you said, but that isn't this case. It is, Your Honor. In this case, after the press release came out, there was a face-to-face meeting on July 29th at a hotel in San Diego, at which direct questions were put to Losatin and Schneider, and they responded and said, in spite of what you've seen, we're doing well, our orders are up, we can't fill them. Thank you very much. Okay. Thank you both for your arguments. It's a very interesting case, and it's submitted for decision, and the Court will stand adjourned. Thank you, Your Honor. All rise.
judges: T.G. Nelson, Siler, Hawkins